REBECCA M. McMAHON *vs.* UNITED ELECTRIC RAILWAYS COMPANY.

PATRICK J. McMAHON *vs.* SAME.

JULY 24, 1942.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

FLYNN, C. J.    These actions of the case were brought respectively by a wife and her husband to recover damages

resulting from personal injuries sustained by the wife by reason of the defendant's alleged negligence. A jury in the superior court returned verdicts of $500 for the wife and $750 for her husband. The trial justice thereafter denied the defendant's motion for a new trial in the wife's case and granted one in the husband's case unless all of his verdict in excess of $450 was remitted. Such remittitur was duly filed and each case is here on the defendant's exceptions to the denial of its motions for a directed verdict and for a new trial unconditionally. Since the husband's case depends upon the wife's right to recover, we shall refer only to her case, unless otherwise stated.

The evidence shows the following facts: On December 15, 1939 the plaintiff Rebecca M. McMahon boarded the defendant's bus about 7 p. m. at a regular bus stop on Exchange Place in Providence and was transported to the Joyland Ballroom in the city of Woonsocket where a bingo party was being held. The bus was owned by the defendant and was operated by one of its regular employees. Tickets, including transportation and entrance to the bingo, were sold by a person who apparently had some undisclosed connection with the association which conducted the bingo. The bus driver, however, kept count of the passengers and turned in to the defendant his report forms concerning the mileage covered and the number of passengers carried.

The passengers were discharged at the main entrance of Joyland and as a result of what he was told "by somebody connected with the bingo association" the driver parked the bus in the rear on the adjoining lot. He selected the particular place near a big boulder where he had parked practically "every time I went there". No direction to park in that place, as distinguished from any other place on the lot, was given to the driver by anybody. The bus was parked by him so that its right wheels were on a ridge, thereby causing it to tilt to its left and to raise the right step higher than the average eighteen inches from the ground. There was also a rut or depression underneath the right step.

The parking lot was not floodlighted that night. At the rear of the ballroom, through which the plaintiff came out to return to Providence, there was only one dim light. This door was nearest to the bus, the destination sign of which was admittedly lighted; but the testimony as to whether the light in the step well of the bus was on or off is in conflict. That light was controlled by a separate switch and required manual operation. The night was clear and cold and the general surface of the parking lot was hard and uneven. According to the plaintiff and her witnesses, it was so dark that the step was not discernible and they more or less felt or groped for it.

Plaintiff grasped the "handlebar" or stanchion with her right hand and raised her right foot to the step with difficulty, because of its height from the ground. While in that position her left foot slipped into the rut or hole underneath the step, which she could not see, thus causing her right foot to slip from the step so that her right leg became injured. Some persons about to board the bus caught her, thus preventing a complete fall to the ground; and then they assisted her while she pulled herself up to the step and platform. When she reached her seat, she noticed that the bus was tilted considerably, as did other passengers. This was denied by the driver. The plaintiff also testified that the driver did not turn on the lights in the bus or step until after she had boarded it, whereas he testified that all lights, with the possible exception of the headlights, had been turned on previously.

Some passengers had boarded the bus before the plaintiff and others did so thereafter; and they testified that they had great difficulty because of the height of the step and the darkness. One of them testified that she had reported these conditions to the driver before the plaintiff was injured. This was denied by the driver. The plaintiff first reported her accident to the ticket seller but he referred her to the driver who, upon arrival in Providence, wrote a report thereof and filed it, together with his other forms, with the defendant.

The defendant contends that it was entitled to a directed verdict in each case because the bus driver, in parking the bus, acted as the agent of the bingo association and not as the agent of the defendant. Several cases from other jurisdictions, particularly relating to undertakers, have been cited in support of the contention that the defendant retained only the general control of the bus and driver and that the special control of both was exclusively in the bingo association. We need not disagree with the principle of the law of master and servant, followed in those cases, to distinguish them from the instant case. All of them apparently contained evidence of the existence of a contract the nature and terms of which provided that exclusive control of both the vehicle and driver was transferred from the general to the special employer or master.

If there were any such contract in the instant case, the defendant made no attempt to show it by the best evidence. No officer of the defendant company and no person connected with the bingo association was called to so testify. On the other hand, the facts in evidence, if viewed most favorably to the plaintiff, would fairly support the conclusion that the defendant never relinquished to the association the right to control the bus and driver at any time or in any way. Unless the evidence required the conclusion that the association had the right to control not only the result—here the parking of the bus—but the means and manner of obtaining that result, a direction for the defendant on this ground would have been erroneous. *Higham* v. *T. W. Waterman Co.*, 32 R. I. 578; *Coyne* v. *Coastwise Dredging Co.*, 36 R. I. 278; *McCarthy Freight System, Inc.* v. *Durand*, 63 R. I. 430, 434.

The defendant further contends that a verdict should have been directed because the plaintiff was guilty of contributory negligence as a matter of law. We cannot agree with this contention upon the evidence here. Ordinarily that question is one of fact for the jury to determine in the first instance. The plaintiff can not be held guilty of contributory negligence unless that is the only reasonable conclusion from

all the evidence. The evidence here submits fairly to different ent reasonable conclusions. Some passengers had preceded the plaintiff and some came after her, and all of them apparently felt that it was reasonably safe to attempt to board the bus, notwithstanding the existing conditions of location, lighting, height of the step, and condition of the ground underneath the step. Viewed most favorably to the plaintiff, this and other facts negative the conclusion that no ordinary or prudent person would have attempted to board the bus under the circumstances; and on such view the question of plaintiff's contributory negligence became one of fact for the jury. Therefore, we find no error in the trial justice's refusal to direct a verdict in either case.

The defendant next contends that it was entitled to a new trial in each case because the evidence preponderated against the verdict, and particularly so in that of the husband. The question, however, before us under these exceptions is whether the trial justice was clearly wrong in denying defendant's motion for a new trial. Defendant does not contend that he misconceived or overlooked any material evidence; nor does it contend that there was no evidence of the defendant's negligence if the plaintiff and her witnesses are believed. It relies on the claim that the evidence clearly shows that the bingo association was the special master of the driver and controlled his parking of the bus, and that the plaintiff was guilty of contributory negligence.

Whether defendant or the bingo association had the right to control the driver in parking the bus where and as he did was squarely placed before the jury in a charge to which no exception was taken. The evidence on this point shows that one, whose authority is not disclosed, gave a mere general direction to the driver to park in the rear. There is no evidence of the right or attempt on the part of that person to control the driver or the manner and means of the actual parking of the bus. As a matter of fact, the driver himself selected the particular place and the manner in which the bus was parked. The only other pertinent evidence on that

point concerned the sale and collection of combination tickets by some person allegedly acting for the association. However, that person never presumed to have the right to control nor to issue orders to the driver as to the operation or parking of the bus in any way. In our opinion, the evidence amply supported the verdict upon that issue.

The issue of plaintiff's contributory negligence likewise was submitted to the jury. Its determination depended considerably on the credibility of the plaintiff and her witnesses, which was challenged by defendant's production of certain signed statements concerning this accident. Whether they differed substantially from the material facts testified to in the trial was one of the questions for the jury to determine. The jury saw and heard the witnesses and apparently believed the plaintiff and her witnesses. The trial justice, who had a similar opportunity, refused to set aside either verdict on the ground of liability. From our examination of the conflicting evidence, we cannot say that the trial justice was clearly wrong.

As to the husband's case, we are of the opinion that the evidence not only fails to support the original award of $750 as damages, but that the verdict as reduced by the remittitur is still grossly excessive and unsupported by the evidence. If we assume, which is not at all clear, that all the monetary losses for doctor's and hospital bills and for domestic assistance were properly recoverable on the evidence in his case, the total amount thereof would be $240. The husband did not testify at all and we have found no evidence to support any other allowance to him. Moreover, under the charge as given, a verdict covering these items was all that could properly have been returned.

Under the circumstances, all the defendant's exceptions in the case of Rebecca M. McMahon are overruled, and the case is remitted to the superior court for entry of judgment on the verdict.

In the case of Patrick J. McMahon the defendant's exception is sustained and the case is remitted to the superior

court for a new trial unless the plaintiff shall, on or before August 5, 1942, remit all of the verdict in excess of $240. If such remittitur shall be filed, the superior court is directed to enter judgment for the plaintiff on the verdict as reduced by such remittitur.

*John C. McOsker,* for plaintiffs.

*Earl A. Sweeney, Frank J. McGee,* for defendants.